**D. J. McQUESTION AND SONS**

v.

**The UNITED STATES.**

**No. 335–67.**

United States Court of Claims.

March 19, 1971.

---

Harry H. Meisner, Detroit, Mich., attorney of record, for plaintiff. Meisner & Meisner, Detroit, Mich., of counsel.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to prepare and file his opinion on the issues of plaintiff's motion and defendant's cross-motion for summary judgment under the order of reference and Rule 166(c). The commissioner has done so in an opinion and report filed on February 12, 1970, wherein such facts as are necessary to the opinion are set forth. Plaintiff filed a request for review by the court of the commissioner's report; defendant urged that it be upheld and the petition dismissed. The case has been submitted to the court on oral argument of counsel and the briefs of the parties.

Since the court agrees with the opinion and recommended conclusion of the trial commissioner, with very slight modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, plaintiff's motion for summary judgment is denied, defendant's cross-motion is allowed, and plaintiff's petition is dismissed.

### OPINION OF COMMISSIONER

WHITE, Commissioner:

The plaintiff in this case asks the court to review, under the provisions of the Wunderlich Act (41 U.S.C. §§ 321, 322 (1964)), a decision by the Corps of Engineers Board of Contract Appeals dated March 27, 1967 (ENG BCA 2714), to the effect that the plaintiff had not established its entitlement to an equitable adjustment under the "changed conditions" provision of Contract No. DA–34–066–CIVENG–62–2441.

It is my opinion that the administrative decision should be upheld.

Contract No. DA–34–066–CIVENG–62–2441 ("the contract") was entered into under the date of May 15, 1962, between the plaintiff and the defendant (represented by a contracting officer of the United States Army Engineer District, Tulsa, Corps of Engineers). Under the contract, the plaintiff was to construct the earthen first-stage embankment and to perform the spillway excavation at the Millwood Dam, Little River, Arkansas. The total contract price was estimated to be $2,058,780.

The earthen first-stage embankment was to be approximately 8,500 feet long and was to consist of approximately 290,000 cubic yards of impervious material at the core of the embankment, of approximately 335,000 cubic yards of select random material, and of approximately 2,160,000 cubic yards of random material.[1] The contract specifications prescribed fairly strict requirements with respect to the material that might be used for the impervious core of the embankment; and the specifications prescribed a somewhat less strict standard with respect to the material that might be used for the select random fill. The material to be used for random fill did not have to meet any particular requirement, except that it had to be essentially inorganic in nature and capable of being compacted in thin lifts. Any material suitable for the impervious core was also suitable for use as select random fill or as random fill; and any material suitable for select random fill was also suitable for use as random fill.

The contract specifications and drawings indicated that borrow area B, which

---

1. In addition, some filter material was to be used. However, the filter material is not involved in the present litigation.

ran parallel to the axis of the embankment, would be the source of the materials to be used for the impervious core of the embankment, for the select random fill, and for the random fill.

Paragraph 4 of the general provisions of the contract stated as follows:

## 4. CHANGED CONDITIONS

The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting Officer in writing of: (a) subsurface or latent physical conditions at the site differing materially from those indicated in this contract, or (b) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract. The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do so materially differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly. *Any claim of the Contractor for adjustment hereunder shall not be allowed unless he has given notice as above required;* or unless the Contracting Officer grants a further period of time before the date of final payment under the contract. If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Clause 6 of these General Provisions.

The contract contained, as paragraph 6 of the general provisions, the standard "disputes" provision that is customarily found in Government construction contracts.

Notice to proceed with the work under the contract was issued to the plaintiff under the date of May 23, 1962. All of the work was completed by February 20, 1964.

By means of a letter dated September 8, 1964 (which was more than 6 months after the completion of the work under the contract), the plaintiff submitted to the contracting officer a claim for additional compensation in the aggregate amount of $305,933.15. The claim consisted of six separate items. Only item 1 is involved in the present litigation. Item 1 was in the amount of $187,656.20 and was asserted under the "changed conditions" provision of the contract.

In a decision dated May 6, 1965, the contracting officer denied the plaintiff's "changed condition" claim, on the ground that the plaintiff had failed to give the contracting officer a timely notice with respect to the encountering of the alleged "changed condition," as required by paragraph 4 of the general provisions of the contract, and that the failure to give a timely notice had materially prejudiced the rights of the defendant.

The plaintiff appealed to the Corps of Engineers Board of Contract Appeals ("the Board") from the contracting officer's decision of May 6, 1965. After holding a hearing in September 1966, the Board rendered a decision on March 27, 1967 (ENG BCA 2714). In its decision, the Board discussed the evidence that had been adduced at the hearing, and then reached the following conclusion:

> We conclude from the evidence presented by the appellant [plaintiff] that it has failed in its burden of establishing that the materials which it encountered differed materially from what is shown on the contract drawings and log borings or that the soil conditions encountered were not what an experienced contractor should have anticipated from a reasonable analysis of the core boring data and specifications. * * *

In view of the adverse decision on the merits of the plaintiff's "changed condition" claim, the Board stated that it was unnecessary to pass on the question of whether the plaintiff had given a timely notice to the contracting officer.

At the hearing before the Board, the plaintiff did not attempt to prove that it had encountered (in the language of the "changed conditions" provision of the contract) "subsurface or latent physical conditions at the site differing materially from those indicated in this contract," or "unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract." Accordingly, the Board was correct in deciding that the plaintiff had failed to establish its entitlement to an equitable adjustment under the "changed conditions" provision of the contract.

The plaintiff's evidence in support of the claim now under consideration was to the effect that the subsurface information (in the form of logs of core borings and other data) which the defendant furnished to the plaintiff and other prospective bidders, which the plaintiff used in preparing its bid, and which became part of the contract papers, indicated that an adequate supply of impervious material and select random material for the eastern portion of the embankment would be available from the eastern part of borrow area B, and that an adequate supply of such materials for the western portion of the embankment would be available from the western part of borrow area B, so that no haulage of any such material for a distance greater than 2,000 feet would be required; that after the commencement of the plaintiff's operations under the contract, personnel of the defendant took the position that the plaintiff should not use materials from the western part of borrow area B in the impervious core of the embankment or as select random fill, asserting that the western part of borrow area B was not a suitable source of materials for such purposes; that the plaintiff was accordingly required to haul all of the impervious and select random materials for the entire embankment, including the western portion, from the eastern part of borrow area B; that this made it necessary for the plaintiff to haul impervious and select random materials for distances greater than 2,000 feet in constructing the western portion of the embankment, which increased the plaintiff's costs over what the plaintiff had reasonably contemplated when it entered into the contract; and that the position taken by the defendant's personnel was erroneous, since the western part of borrow area B actually contained an adequate supply of suitable materials that could have been used for the placement of the impervious core and the select random fill in the western portion of the embankment.

It appears from the summary of the plaintiff's evidence set out in the preceding paragraph that the gravamen of the plaintiff's complaint was that personnel of the defendant breached the contract or ordered a change by refusing to permit the plaintiff to utilize, in the construction of the western portion of the embankment, materials from the western part of borrow area B which the plaintiff was authorized by the provisions of the contract to use for the impervious core and the select random fill.

The preponderance of the evidence in the administrative record establishes, however, that the plaintiff was not instructed by the contracting officer, or by the defendant's resident engineer on the job, or by any other responsible official of the defendant, that the plaintiff should not use materials from the western part of borrow area B for the impervious core of the embankment or for select random fill. What happened was that the plaintiff dug some test holes in the western part of borrow area B, subsurface samples were taken from such holes, and the samples were submitted to a nearby soils laboratory maintained by the defendant. The plaintiff was subsequently informed by laboratory personnel that most of the samples failed to meet the standards prescribed by the contract specifications for impervious and select random materials. The plaintiff proceeded to procure from the eastern part of borrow area B the materials that were

needed for the impervious core and the select random fill in the western portion of the embankment, instead of making a further effort to develop the western part of borrow area B as a source of impervious and select random materials for use in the western portion of the embankment. There is no way of determining accurately from the evidence in the administrative record whether, if the development of the western part of borrow area B had been seriously undertaken by the plaintiff, it would or would not have provided an adequate supply of impervious and select random materials for the western portion of the embankment.

The plaintiff did not introduce before the Board any evidence showing that the subsurface data which the defendant furnished to prospective bidders were erroneous. On the contrary, the plaintiff's witnesses conceded that the defendant's subsurface data correctly reflected the actual subsurface conditions at the particular places from which such data were derived.

Furthermore, the plaintiff did not introduce any evidence showing that the defendant's laboratory personnel erred in reporting that most of the subsurface samples taken from test holes dug by the plaintiff in the western part of borrow area B failed to meet the standards prescribed by the contract specifications with respect to impervious and select random materials.

Therefore, it must be concluded that the evidence in the administrative record not only failed to establish that the plaintiff had encountered a "changed condition," as that term was defined in paragraph 4 of the general provisions of the contract, but that the evidence also failed to establish a breach of contract or a change order by the defendant.

## CONCLUSION

It necessarily follows that the plaintiff's motion for summary judgment is denied, that the defendant's cross-motion for summary judgment is allowed, and that the petition is dismissed.